UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONTINENTAL CASUALTY
COMPANY,

       Plaintiff,

v.                                                                            Case No.  8:05-cv-50-T-24 TBM

BONNIE M. REESE,

       Defendant.

_____/

## **ORDER**

This cause comes before the Court on Plaintiff's Motion for Summary Judgment.  (Doc. No. 37).  Defendant opposes the motion.  (Doc. No. 43).  The Court held a hearing on this motion on July 7, 2006.

## **I.  Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  See id.  When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II.  Background

This suit involves the payment of an insurance claim that was made to Defendant Bonnie Reese for a loss that occurred on August 13, 2004 due to hurricane damage to Reese's yacht. The two issues in this case are (1) whether Reese had coverage on August 13, 2004–the date of the loss, and (2) if there was no coverage and Reese was paid by the insurance company due to a mistake, whether the insurance company is entitled to have Reese return the funds mistakenly paid to her in settlement of her claim.

Plaintiff Continental Casualty Company ("Continental") is an insurance company.  Boat

Owners Association of the United States ("Boat Owners") is the Marine Manager for Continental's Yacht Insurance Program.  (Nolan affidavit,[1] ¶ 1).

Reese owned a yacht that she kept in Captiva, Florida.  (Reese depo,[2] p. 66).  Reese resided in Indiana and maintained part-time residency in Florida.  (Reese depo, p. 13-14).

Reese applied for insurance coverage for her yacht.  On the insurance application, Reese identified her residence as Indiana, and she indicated that her yacht was located at her Florida home.  (Nolan affidavit, Ex. A).  When applying for the insurance coverage, she provided her Indiana address for mailing purposes.  (Reese affidavit,[3] ¶ 4).  The insurance quote indicates that Boat Owners sent the quote to Reese's Indiana address.  (Reese depo, p. 32-33; Reese depo, Ex. 1).  Thereafter, Boat Owners sent Reese a letter enclosing a marine insurance binder, and the letter indicates that it was sent to Reese at her Indiana address.  (Reese depo, p. 34; Reese depo, Ex. 2).  The letter stated that in order for coverage to be put into effect, Reese was required to mail the premium payment and indicate her desired effective date for coverage.  (Reese depo, Ex. 2).  Reese paid the premium, and on July 3, 2002, Continental, through Boat Owners,[4] issued Reese a marine insurance policy providing property damage coverage for the yacht.  (Nolan affidavit, ¶ 3).  Reese did not receive a copy of the insurance policy.  (Reese depo, 36-37).

The policy provided a coverage period from July 3, 2002 to July 3, 2003.  (Nolan affidavit, Ex. B).  Before the policy lapsed, a renewal offer was sent to Reese's Indiana address.

---

[1](Doc. No. 34)

[2](Doc.  No. 33)

[3](Doc. No. 44).

[4]Boat Owners underwrote and managed the insurance policy for Reese's yacht.  (Nolan affidavit, ¶ 3).

(Nolan affidavit, ¶ 4).  Reese renewed the policy for the period covering July 3, 2003 to July 3, 2004, and she received the renewal declarations page.  (Nolan affidavit, ¶ 4; Reese affidavit, ¶ 5).

The parties dispute whether a policy was issued for the July 3, 2004 through July 3, 2005 coverage period.  In August of 2004, Reese's yacht sustained hurricane-related damage in Florida as a result of Hurricane Charley.  (Reese depo, p. 52, 54).  Reese reported the incident to Boat Owners on August 21, 2004.  (Reese depo, p. 52-53; Reese affidavit, ¶ 9).

Boat Owners erroneously entered the date of loss into their system as occurring on July 1, 2004, within the 2003-2004 coverage period.[5]  (Copeland affidavit,[6] Ex A).  Thereafter, Reese repeatedly spoke to a Boat Owners representative who at all times represented to her that she had full coverage for the damage to her yacht.  (Reese affidavit, ¶ 12, 15).

On September 28, 2004, Boat Owners informed Reese that she would be paid $200,000 in final settlement of her claim, and it requested that Reese fill out and return the enclosed Proof of Boat Loss form.  (Reese affidavit, Ex. 3).  On the Proof of Boat Loss form, Reese stated that the damage to her yacht occurred on August 13, 2004.  (Reese affidavit, Ex. 4).

On October 14, 2004, Boat Owners issued Reese two checks totaling $204,950.00 for the damage to her yacht.  (Reese depo, p. 56-57; Reese depo, Ex. 7, 8).  Reese received these checks

---

[5]Continental contends that the wrong date was entered into the system because Reese initially reported that July 1, 2004 was the date of the loss.  (Doc. No. 35, Copeland affidavit, ¶ 2).  Reese disputes that she ever reported a July 1, 2004 date of loss.  (Reese affidavit, ¶ 13).  Since this is a motion for summary judgment and all facts must be construed in the light most favorable to Reese, the Court will assume that the reason that the wrong date of loss was entered into the system was due to a unilateral mistake on Boat Owners' part, not due to a mutual mistake by both parties.

[6](Doc. No. 35)

4

in Florida, and she deposited these checks into her bank account.  (Reese depo, p. 56-57, 66;

Reese depo, Ex. 7, 8).  These checks indicate the date of loss as being July 1, 2004.  (Reese

depo, Ex. 7, 8).  The letter that accompanied these checks stated that her insurance policy was

being cancelled, effective October 14, 2004, since she was being paid a total or constructive total

loss.  (Robertson affidavit,[7] Ex. A).  The letter also stated that her full annual insurance premium

was earned.  (Robertson affidavit, Ex. A).

On October 26, 2004, Boat Owners mailed Reese a letter to her Indiana address that

informed her that the insurance company had made a mistake regarding the coverage for the

damage to her yacht, since the damage occurred in August of 2004 and her policy had expired on

July 3, 2004.  (Robertson depo, ¶ 4; Robertson depo, Ex. C).   The letter stated that the insurance

company was reviewing the matter and would get back with her shortly regarding their position.

(Robertson depo, Ex. C).  Reese received this letter on or about October 29, 2004, at which time

she attempted to pay Boat Owners the full premium for the 2004 - 2005 coverage period.

(Robertson affidavit, Ex. E).  On November 11, 2004, Boat Owners sent Reese's attorney a letter

requesting that Reese return the $200,000 that was paid to her.  (Robertson affidavit, Ex. F).

Reese refused to return the $200,000.  (Robertson affidavit, Ex. G).

Reese contends that she no longer has the money that Boat Owners paid her for the

damage to her yacht.  (Reese affidavit, ¶ 21).  She states that she relied on the representations of

Boat Owners after she reported the loss that she had coverage and that she accepted their

payment based on those representations.  (Reese depo, ¶ 21).

On January 7, 2005, Continental filed suit against Reese seeking (1) a declaratory

---

[7](Doc. No. 36)

judgment that the policy had lapsed on July 3, 2004, and as such, Reese was required to return

the money paid to her; (2) recission of the settlement agreement regarding Reese's claim and a

return of the money paid to her; and (3) restitution of the money paid to Reese.  (Doc. No. 1).

Continental now moves for summary judgment on its claims.

**III.  Motion for Summary Judgment**

Continental filed the instant motion for summary judgment on its claims.  Before the

Court can analyze Continental's claims, the Court must determine the appropriate law to apply to

this case.

**A.  Choice of Law Analysis**

The parties dispute whether Indiana or Florida law applies.  Continental argues that

Indiana law applies, because the forum's choice of law rules apply, and Florida applies the *lex*

*loci contractus* rule to conflicts of law issues in contract cases.  While the forum's choice of law

rules apply in diversity cases, see LaFarge Corp. v. Travelers Indemnity Co., 118 F.3d 1511,

1515 (11th Cir. 1997), this case involves a marine insurance policy, which is a maritime contract

within federal admiralty jurisdiction, see Morrison Grain Co., Inc. v. Utica Mutual Ins. Co., 632

F.2d 424, 428 n.4 (5th Cir. 1980).

The choice of law analysis in maritime contract cases is based on the Second Restatement

of Conflicts of Law, Section 188.  See Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d

1377, 1381 (11th Cir. 2006).  In conducting the choice of law analysis based on the Restatement,

the Court must determine which state has the most significant relationship with the transaction at

issue.  See id. at 1382.  The factors to be considered in this analysis "are: (a) the place of

contracting; (b) the place of negotiation; (c) the place of performance; (d) the locus of the subject

matter of the contract; and (e) the domicile of the parties." Id.

    After considering these factors, the Court finds that the state that has the most significant

relationship with the transaction at issue is Florida.  The Court bases this conclusion on the fact

that the subject matter (the yacht) was located in Florida, and Reese maintained part-time

residency in Florida.  Furthermore, the insurance company's performance took place in Florida,

as that is where it investigated the damage to Reese's yacht, and that is where Reese received the

checks paying her claim.  Additionally, Reese testified at the hearing that the negotiation for the

initial policy occurred in Florida, since that is where she was located when she faxed her

supplemental application to Boat Owners.[8]  On the other hand, Indiana's relationship to this case

is based on the fact that Reese also maintains residency there, and she used her Indiana address

as a mailing address.  Accordingly, the Court will apply Florida law to this case.

    **B.  Is Continental Entitled to Have the Money Returned?**

    Continental moves for summary judgment, arguing that the money paid to Reese must be

returned.  In support of this contention, Continental argues that the policy lapsed on July 3, 2004,

and as such, no coverage existed on August 13, 2004–the date of the loss.  Therefore,

Continental argues that: (1) the payment to Reese was due to a unilateral mistake by Boat

Owners regarding the date of the loss and results in unjust enrichment to Reese; (2) Reese cannot

succeed on her second and third affirmative defenses; and (3) Reese is not entitled to attorneys'

fees if she prevails.[9]  Accordingly, the Court will address each argument.

_____

    [8]At the hearing, Reese submitted the application as Defendant's Exhibit Number 1.  The
application shows that it was faxed from an area code within Florida.

    [9]Continental also argues that it is entitled to summary judgment because the payment to
Reese was due to a mutual mistake by both parties regarding the date of the loss (since it

## 1.  Was There Coverage for the 2004-2005 Period?

Continental argues that the policy lapsed on July 3, 2004 due to non-renewal.  The Court, however, finds that this is a disputed issue of fact, as explained below.

Continental contends that on June 2, 2004, a renewal offer was mailed to Reese at her Indiana address along with a declarations page.  (Nolan affidavit, ¶ 5).  Reese did not respond to the renewal offer, and Continental contends that a reminder binder letter was sent to Reese on July 3, 2004.  (Nolan affidavit, ¶ 6).  The reminder binder letter informed Reese that she could renew her coverage for the 2004 - 2005 period as long as 30% of her annual premium payment was received by July 18, 2004.  (Nolan affidavit, ¶ 6).  Reese did not respond to the reminder binder letter.  (Nolan affidavit, ¶ 7).  Furthermore, Reese concedes that she did not pay the annual premium prior to the hurricane damage to her yacht.[10]  Therefore, Continental contends that the policy lapsed by its own terms on July 3, 2004 due to non-renewal.

Reese, however, disputes Continental's assertion that she did not have coverage for the 2004-2005 period.  Specifically, she contends that she never received the renewal notices, and despite her non-payment of the premium, a new policy for the 2004-2005 period went into effect.  She bases this contention on the fact that (1) Boat Owners sent her a declarations page for a policy covering the 2004-2005 period that was countersigned by its agent, indicated a new policy number, and indicates that it was cancelled on August 21, 2004 (during the 2004-2005 coverage

---

contends that Reese initially reported the date of loss as July 1, 2004).  The Court rejects this argument, since whether there was a mutual mistake is a disputed issue of fact in this case.

[10]Reese stated at her deposition that she had no proof that she paid any portion of the annual premium for the 2004 - 2005 period.  (Reese depo, p. 60-61).  Furthermore, Reese stated at the hearing that she did not pay the premium for the policy prior to the damage to her yacht.

period), (2) the insurance agent's representations that the loss (which occurred during the 2004-2005 period) was covered, and (3) the October 14, 2004 letter from Boat Owners stating that the insurance policy was cancelled effective October 14, 2004 (which is during the 2004-2005 period).  (Doc. No. 37, Ex. 2E and 4A; Reese affidavit, ¶ 15).

While it appears to the Court, logically, that there was no coverage due to Reese's failure to pay the premium that was due in order to obtain coverage for the 2004-2005 period (and instead, any representations regarding coverage for that period were due to a mistake and/or carelessness by the insurance company), the Court must construe the evidence in the light most favorable to Reese.  Reese submitted evidence from which the trier of fact could conclude that a policy for the 2004-2005 period was issued (although it appears that any such issuance was likely due to a mistake by the insurance company).  As such, the Court denies Continental's motion to the extent that it argues that the undisputed facts show that the policy lapsed on July 3, 2004.

### 2.  Unilateral Mistake/Unjust Enrichment

If Continental shows at trial that the policy lapsed on July 3, 2004, Continental argues that it is entitled to have the money paid to Reese returned, because the payment to Reese was due to a unilateral mistake by Boat Owners regarding the date of the loss and results in unjust enrichment to Reese.  As such, Continental argues that it is entitled to restitution of the money paid to Reese.

The Court rejects this argument, as genuine issues of material fact exist.  In Florida, a contract can be set aside on the basis of a unilateral mistake as long as: "(1) the mistake goes to the substance of the agreement, (2) the error does not result from an inexcusable lack of due

care, and (3) the other party has not relied upon the mistake to his detriment." Roberts &

Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1291 (11th Cir. 1998)(internal quotations and

external citations omitted).  While this Court notes that Florida courts have interpreted whether a

mistake occurs as a result of an inexcusable lack of due care generously to the benefit of the

erring party, see id. at 1293, Continental has not fully explained how the alleged mistake

occurred.  As such, the Court cannot determine at this time whether the mistake was a result of

an inexcusable lack of due care.        For instance, Continental argues that the mistake was due

to the wrong date of loss (July 1, 2004) being entered into the system; however, it is unclear as to

why the wrong date was entered into the system.  Furthermore, if payment to Reese was due to

the wrong date of loss being mistakenly entered into the insurance company's system (i.e., a date

of loss that occurred before the 2003-2004 policy allegedly lapsed), it is unclear why the

insurance company would later state in its October 2004 letter that the 2004-2005 policy was

being cancelled when the cancellation was due to a loss that it believed occurred during the

2003-2004 coverage period.  Therefore, it appears that the insurance company may also have

been mistaken regarding whether Reese had coverage for the 2004-2005 period.  As such, not

only is the cause of the alleged mistake unclear (i.e., why was the wrong date entered into the

system and/or why did the insurance company believe that there was coverage for the 2004-2005

period), but also the exact nature of the mistake is unclear (i.e., was the payment to Reese due to

a mistake regarding the date of loss or a mistake regarding whether there was coverage for the

2004-2005 period).  Without knowing the nature and cause of the mistake, the Court cannot

determine whether the mistake was a result of an inexcusable lack of due care.  Accordingly, the

Court denies Continental's motion for summary judgment on this issue.

### 3.  Second Affirmative Defense

In her second affirmative defense, Reese states that Continental is estopped and/or waived any of the relief requested in the complaint because of its inexcusable lack of due care and/or her detrimental reliance.  Continental argues that Reese cannot succeed on this affirmative defense, because estoppel cannot be used to create coverage.[11]  See Doe v. Allstate Ins. Co., 653 So. 2d 371, 373 (Fla. 1995).

It appears that Reese has combined two affirmative defenses here: (1) estoppel (in support of the argument that coverage was in place for the 2004-2005 period), and (2) no recission for unilateral mistakes that are the result of an inexcusable lack of due care or that result in detrimental reliance by the other party.  Continental is correct that estoppel cannot be used to create coverage.  Therefore, to the extent that Continental seeks summary judgment on the issue of whether estoppel can be used to create coverage, the Court grants Continental's motion.  Thus, if the trier of fact finds that a policy was not issued for the 2004-2005 period, Reese cannot argue that Continental is estopped from denying that coverage existed for the 2004-2005 period.  However, to the extent that this affirmative defense alleges that Continental cannot rescind the settlement of her claim due to its unilateral mistake, the Court finds that Continental is not entitled to summary judgment on this issue.

### 4.  Third Affirmative Defense

In her third affirmative defense, Reese alleges, in part, that Continental is not entitled to

---

[11]An exception to this rule exists, and promissory estoppel may be used to create insurance coverage where to refuse to do so would sanction fraud or other injustice.  See Crown Life Ins. Co. v. McBride, 517 So. 2d 660, 662 (Fla. 1988).  This exception, however, is not applicable to the instant case.

the return of the money, because it did not comply with the non-renewal provision in Florida

Statute § 627.4133, which provides that an insurer must give the insured at least 45 days advance

written notice of non-renewal or of the renewal premium.  The parties dispute whether such

notice was given, since Reese contends that she never received such notice.  However,

Continental argues that § 627.4133 is inapplicable to the instant case, because the policy was

issued to her in Indiana, and § 627.401(2) provides that the notice requirement is not applicable

to policies not issued for delivery in Florida or actually delivered in Florida.

The Court agrees that Continental is entitled to summary judgment regarding this

affirmative defense to the extent that it is based on § 627.4133.  There is no evidence that the

policy was actually delivered to Reese in Florida, since Reese contends that she never received a

copy of any of the insurance policies.  (Reese affidavit, ¶ 5).  Furthermore, the 2003-2004

insurance policy indicates that it was mailed to Reese at her Indiana address.[12]  (Nolan affidavit,

Ex. C).  Accordingly, the Court finds that pursuant to § 627.401(2), the notice requirement

contained in § 627.4133 is inapplicable to this case.

### 5.   Attorneys' Fees

Next, Continental argues that even if Reese prevails in this lawsuit, she is not entitled to

an award of attorneys' fees under Florida Statute § 627.428.  Section 627.428 provides that if a

court renders a judgment against an insurer and in favor of the insured or beneficiary under the

policy, the court shall award reasonable attorneys' fees.  Continental argues that this provision is

not applicable to Reese, because§ 627.401(2) provides that the attorneys' fee provision is

---

[12]The 2002-2003 policy also indicates that it was mailed to Reese's Indiana address.
(Nolan affidavit, Ex. B).

inapplicable to policies not issued for delivery in Florida or actually delivered in Florida.  <u>See</u> <u>also</u> <u>Prime Insurance Syndicate, Inc. v. B.J. Handley Trucking, Inc.</u>, 363 F.3d 1089, 1092 (11th Cir. 2004).  The fact that the insurance policy covered Reese's yacht that was located in Florida does not trigger entitlement under the statute.  <u>See</u> <u>Travelers Indemnity Co. of Illinois v. Royal</u> <u>Oak Enterprises, Inc.</u>, 359 F. Supp.2d 1321, 1323 (M.D. Fla. 2005).  Since there is no evidence that a policy was issued for delivery in Florida or actually delivered in Florida, the Court finds that the attorneys' fee provision in Florida Statute § 627.428 does not apply to this case, and Continental is entitled to summary judgment on this issue.

**IV.  Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Florida law applies to this case and Plaintiff's Motion for Summary Judgment (Doc. No. 37) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court finds that (1) if the trier of fact finds that a policy was not issued for the 2004-2005 period, Reese cannot argue that Continental is estopped from denying that coverage existed for the 2004-2005 period; (2) the notice requirement contained in Florida Statute § 627.4133 does not apply to this case; and (3) the attorneys' fee provision in Florida Statute § 627.428 does not apply to this case.  Otherwise, Continental's Motion for Summary Judgment is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of July, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record